IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, <br><br> Plaintiff, <br><br> vs. <br><br> ANNE E. LOPEZ in her official capacity as ATTORNEY GENERAL OF THE STATE OF HAWAI'I, <br><br> Defendant | CIVIL NO. 1:25-cv-369-MWJS-WRP <br><br> **DECLARATION OF JENNIFER DACUMOS** |

# DECLARATION OF JENNIFER DACUMOS

I, Jennifer Dacumos, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I am a resident of the State of Hawai'i. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon

1

information and belief. If called as a witness, I am able to testify regarding the matters below.

2. I submit this declaration in connection with ASTRAZENECA PHARMACEUTICALS LP v. ANNE E. LOPEZ, in her official capacity as ATTORNEY GENERAL OF THE STATE OF HAWAI'I (CIVIL NO. 1:25-cv-369).

3. I am currently employed by Hawai'i Pacific Health (HPH) where I have served as the HPH System Director of Pharmacy since 2018. I earned my Doctor of Pharmacy degree from the University of California, San Francisco in 2006.

4. In my role as HPH System Director of Pharmacy, I oversee the pharmacy functions across HPH and its facilities. This includes the administration of the 340B pricing program including facilitating and overseeing contractual relationships with outpatient pharmacies and specialty pharmacies (these are pharmacies focusing on pharmaceutical products for complex medical conditions often needed by our patients).

5. HPH is a non-profit corporation and tax exempt organization that operates as an integrated health care system which includes four (4) hospitals and multiple clinic locations throughout Oahu and Kauai. The hospitals operated by HPH and its affiliates are: Kapi'olani Medical Center for Women & Children, Pali Momi

Medical Center, Straub Benioff Medical Center, and Wilcox Medical Center. HPH is one of two of the largest health care systems in Hawai'i.

6. In my role of HPH System Director of Pharmacy, I am responsible for overseeing 340B Program compliance for the four (4) HPH 340B-qualifed covered entities: Kapi'olani Medical Center for Women & Children located in urban Oahu, a Children's Hospital, Straub Benioff Medical Center located in urban Oahu, a Disproportionate Share Hospital, Pali Momi Medical Center located in Central Oahu, a Rural Referral Center, and Wilcox Medical Center located in Lihue, Kauai, a Disproportionate Share Hospital.

7. In addition to the pharmacies located within HPH hospital facilities, HPH has contractual arrangements with retail pharmacies to facilitate greater patient access and convenience to patients who choose to access their prescribed pharmaceuticals from an extended network of forty pharmacies in the state of Hawai'i. HPH's network contract pharmacies dispenses approximately 13,000 prescriptions a year to patients that access care at our facilities and who live across all islands from our state.

8. All HPH contracted pharmacies function as service providers to HPH covered entities for the purposes of dispensing 340B medication.

9. Only covered entities are eligible to participate in the 340B program. As such, contract pharmacies are not permitted to participate in the 340B program

3

or purchase pharmaceutical products at 340B prices, except pursuant to a compliant contract pharmacy services arrangement with an authorized 340B covered entity.

10. HPH's contract pharmacies are authorized to order and receive 340B pharmaceutical products from third party wholesale distributors on behalf of HPH covered entities. This authorization is standard across all HPH covered entity agreements with contract pharmacies for the 340B program. The covered entity must purchase the drugs and maintain title to the drugs until they are dispensed to patients.

11. HPH covered entities maintain the purchasing account for all 340B pharmaceutical products and are responsible for payment directly to the third party wholesale distributors. To ensure the most efficient method of providing access to pharmaceuticals across Hawai'i, HPH contract pharmacies utilize a system referred to as the Replenishment Model (RM) which is a standard operating practice in the 340B pharmaceutical industry and works accordingly.

12. The contract pharmacy dispenses pharmaceutical products from its regulatory inventory to all patients, including those of the 340B covered entity. There is no physical separation between the 340B and non-340B stock.

13. The contract pharmacy and the 340B covered entity share dispensing and patient eligibility data, usually through a third party administrator (TPA). The TPA uses this data to match eligible prescriptions to eligible patients under the 340B rules and eligible patient definition.

4

14. The RM process enables HPH's contract pharmacies to manage their inventory process by ordering 340B drugs only as needed to replenish their stock. Under this process, contract pharmacies are only able to order quantities of drugs for covered entities that have been reviewed and deemed eligible for 340B pricing per the requirements of the Federal 340B program.

15. Accumulations are the quantity of drugs determined to be 340B eligible within a certain time period. Under the RM, the TPA determines the quantity of drugs determined to be 340B eligible (noted as accumulations) for a contract pharmacy to place an order with a drug wholesaler.

16. This RM program promotes compliance by ensuring that the covered entity retains ownership and responsibility for 340B drugs, by relying on retrospective identification of eligible prescriptions, and by helping contract pharmacies strictly adhere to the available accumulation amounts and to not exceed what has been accrued.

17. Allowing contract pharmacies to participate in our RM program facilitates better inventory management and access to 340B pharmaceuticals for our patients.

18. Upon information and belief, the RM is an industry standard practice across 340B programs throughout the nation. Additionally, all HPH covered entities utilize RM for management of their 340B inventory.

19. Even if HPH were not to utilize contract pharmacies, HPH covered entities would still need to utilize RM because maintaining two separate physical inventories of both non 340B and 340B drugs would not be practicable.

20. Additionally, physical inventory requires 340B qualification at the time of dispensing, which is not feasible in a busy pharmacy. Without the RM, a pharmacy would have to use a manual checklist which would lead to a number of issues including human error, higher compliance risk, and possible delay of care.

21. HPH conducts internal audits on more than 2,000 contract pharmacy claims annually. Internal audits promote compliance with all 340B program requirements under the oversight of an internal 340B Oversight Committee and in coordination with a hospital-based Compliance Committee. Issues identified through these internal audits are reported to the covered entity's governing body.

22. With incidences of non-compliance, the impacted claim is reclassified as 340B ineligible. If the product has already been purchased, then a request is made to the distributor to reclassify the purchase from 340B to non-340B pricing.

23. In the event of non-compliance involving a breach of 340B program requirements, all relevant incidents and affected purchases are reported to the internal 340B Compliance Committee. Once the breach is confirmed, a Self-Disclosure letter is submitted to HRSA as promptly as possible. A comprehensive

corrective action plan is then implemented to address the root cause and prevent recurrence.

24. The 340B Oversight Committee is notified once any corrective action plan(s) has been completed.

25. A drug manufacturer's 340B contract pharmacy policy controls a covered entity's access to 340B drugs. Third party wholesale distributors are only allowed to grant a covered entity access to 340B drugs if specified by the manufacturer's 340B contract pharmacy policy.

26. HPH's 340B savings is used to subsidize its Community Benefit, which consistently exceeds the amount of 340B savings amount.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on October 16, 2025, at Honolulu, Hawai'i.

_____
JENNIFER DACUMOS